United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE,<br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION, et al.,<br>Defendants. | Case No. 26-cv-04326-NC<br>**ORDER GRANTING ANTHEM'S AND MICROSOFT'S RESPECTIVE MOTIONS TO DISMISS**<br>Re: ECF 20, 21 |

Plaintiff California Spine and Neurosurgery Institute d/b/a San Jose Neurospine (SJN) filed a Complaint against Defendants Microsoft Corporation and Blue Cross of California d/b/a Anthem Blue Cross (Anthem). This case arises out of Defendants' failure to timely pay SJN $71,888.85 in adjudicated benefits after SJN rendered out-of-network services to a beneficiary covered by the Microsoft Corporation Welfare Plan. The $71,888.85 in adjudicated benefits were determined through the No Surprises Act's (NSA) mandatory independent dispute resolution (IDR) process.

Anthem and Microsoft brought two separate motions to dismiss SJN's Complaint. Anthem argues that all ten counts of the Complaint fail because the NSA contains no express or implied private right of action to enforce IDR determinations (Counts 4 and 5), the Court cannot "confirm" an IDR determination under the Federal Arbitration Act (FAA) (Count 3), SJN's Employee Retirement Income Security Act (ERISA) claims lack standing (Counts 1 and 2), and SJN's state law claims are precluded by the NSA (Counts 6 through

United States District Court
Northern District of California

10). Microsoft incorporates Anthem's arguments as it pertains to SJN's ERISA and state law claims arguments against Microsoft (Counts 1, 2, 9, and 10). As further explained below, the Court GRANTS Anthem's and Microsoft's respective Motions to Dismiss and DISMISSES all claims without leave to amend.

## I. BACKGROUND

### A. No Suprises Act and the IDR Process

"On December 27, 2020, Congress enacted the No Surprises Act . . . as part of the Consolidated Appropriations Act of 2021 to address surprise medical bills." *Marcus v. Rouillard*, No. 19-cv-8057-GW-AGRx, 2022 WL 22573481, at *3 (C.D. Cal. Aug. 5, 2022) (citing Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2758-2890 (Dec. 27, 2020)). Congress passed the NSA to protect patients from surprise medical bills in situations where they have no choice over their provider. 1 Pub. L. No. 116-260, div. BB, tit. 1, 134 Stat. 1182, 2758–2890 (2020).

Prior to NSA, when a patient sought care from an out-of-network provider, the insurer could refuse to cover any of the services or unilaterally decide how much to reimburse the provider. 86 Fed. Reg. 36,872, 36,874 (July 13, 2021). The provider or facility would then "balance bill" the patient for the remaining cost of the services. *Id.* Balance billing, also referred to as "surprise billing," is of particular concern when patients have little choice over providers or facilities. *Id.* A patient does not choose the hospital to which she is brought in an emergency, or which air ambulance company transports her. *Id.* In other situations, patients might seek care at an in-network emergency room only to receive services performed by an out-of-network provider at that facility. *Id.*

"The NSA protects patients by relieving them of liability to pay for the procedure beyond their ordinary in-network insurance payments and instead has the provider and the insurer negotiate or dispute the proper payment among themselves." *Mod. Orthopaedics of NJ v. Premera Blue Cross*, No. 25-cv-01087-BRM-JSA, 2025 WL 3063648, at *3 (D.N.J. Nov. 3, 2025) (citing 42 U.S.C.A. § 300gg-111(c)(1)(A)). "It limits the amount an insured patient will pay for emergency services provided by an out-of-network provider

and for certain non-emergency services provided by an out-of-network provider at an in-network facility." *Marcus*, 2022 WL 22573481 at *3 (citation omitted).

When an insurer makes an initial payment or denies payment to an out-of-network provider, the insurer and the provider must negotiate the amount of payment for a period of thirty days. *Mod. Orthopaedics*, 2025 WL 3063648 at *3 (citation omitted). "If the parties are unable to agree on the amount due, the statute provides a four-day period for either party to submit the dispute to the Secretary of Health and Human Services ('HHS'), initiating an IDR [Independent Dispute Resolution]." *Id.* (citing 42 U.S.C. § 300gg-111(c)(1)(B)).

In an IDR process, a certified IDR entity (CIDRE) conducts a baseball-style arbitration where the parties submit proposals and the CIDRE selects one. 42 U.S.C. § 300gg-111(c); *see Kim-C1, LLC v. Valent Biosciences Corp.*, 756 F. Supp. 2d 1258, 1273 (E.D. Cal. 2010). The CIDRE's determination is "binding upon the parties involved" absent "a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." *Id.* § 300gg-11(c)(5)(E)(i)(I). A party may seek judicial review of an IDR determination only to vacate the award for corruption, fraud, misconduct, impartiality, or when the CIDRE exceeds its power. *Id.* § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a). Otherwise, the NSA bars judicial review. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Following the IDR determination, payment on amounts owed "shall be made directly to the [out-of-network] provider or facility not later than 30 days after the date on which such determination is made." 42 U.S.C. § 300gg-111(c)(6).

**B. Factual Allegations**

SJN's Complaint alleges as follows:

The Microsoft Corporation Welfare Plan (Plan) is a self-funded employee welfare benefit plan. ECF 1 (Compl.) ¶ 25. Microsoft is the Plan administrator and named fiduciary. *Id.* ¶ 28. Anthem is responsible for reviewing claims, issuing benefit determinations, and processing appeals. *Id.* ¶ 28. This includes calculation of allowable amounts for out-of-network services and participation in the NSA IDR process. *Id.*

United States District Court
Northern District of California

Anthem also acted as a fiduciary of the Plan. *Id.* With regard to the amount that the Plan is obligated to pay to out-of-network providers, the Plan states that "[n]otwithstanding any provision of the plan to the contrary, the plan will pay any amounts required by applicable law." *Id.* ¶ 27.

Patient is a beneficiary of the Plan. *Id.* ¶ 2. Patient executed a written assignment in favor of SJN, which transferred to SJN the Patient's right to payment, reimbursement, appeals, breach of fiduciary duty, and other federal and state legal actions. *Id.* ¶ 16.

Patient presented to SJN with lower back pain. *Id.* ¶¶ 39, 43. Before SJN provided surgical services to Patient, SJN verified Patient's insurance coverage and benefits with Anthem. *Id.* ¶ 39. Anthem's representative confirmed Patient's insurance details. *Id.* ¶ 40. SJN provided surgical services to Patient based on the expectation that Defendants would honor coverage as stated by Anthem's representative. *Id.* ¶ 44. After treating Patient, SJN submitted (and Anthem accepted) a Form 1500 Health Insurance Claim Form. *Id.* ¶ 45.

Anthem provided an Explanation of Benefits (EOB) to SJN for the services rendered. *Id.* ¶ 48. The EOB showed that Anthem paid $1,110.59 on the total billed charges of $82,005.00. *Id.* SJN disputed Anthem's payment determination. *Id.* ¶ 49. SJN is an out-of-network provider and therefore does not have a network contract with Microsoft or Anthem that would determine or limit payment for SJN's services to the Patient. *Id.* ¶ 47. But because the service was rendered in a participating network facility, SJN initiated the negotiation period called for by the NSA. *Id.* ¶¶ 47, 49. The dispute was not resolved during the negotiation period. *Id.* ¶ 49. SJN then initiated the IDR process to have the proper reimbursement amount determined by a CIDRE. *Id.*

The CIDRE issued a determination awarding SJN total additional payments of $71,888.85. *Id.* ¶ 57. Because the CIDRE issued these determinations on September 7 and 8, 2025, Anthem's deadline to remit these funds to SJN was October 7, 2025, and October 8, 2025. *Id.* ¶¶ 57–58. As of May 11, 2026, Anthem has not remitted the $71,888.85. *Id.* ¶ 59.

United States District Court
Northern District of California

**C. Procedural History**

SJN filed a Complaint against both Defendants, alleging ten causes of action. Compl. The Complaint alleged Anthem was liable for all ten causes of action (Counts 1 through 10), and that Microsoft was liable for four of them (Counts 1, 2, 9, and 10). *Id.*

Anthem filed a motion to dismiss. ECF 21. SJN opposed. ECF 25. Anthem replied. ECF 34. Anthem also filed a notice of supplemental authority in support of its motion. ECF 36. SJN filed a supplemental brief in response. ECF 39.

Microsoft filed a separate motion to dismiss that incorporated Anthem's motion to dismiss to the extent it pertained to the claims also brought against Microsoft. ECF 20. SJN opposed. ECF 26. Microsoft replied. ECF 33.

All parties have consented to magistrate judge jurisdiction. ECF 7, 10, 17.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) when a district court lacks subject matter jurisdiction over the claim. When a defendant brings a Rule 12(b)(1) motion, the plaintiff has the burden of establishing subject matter jurisdiction. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) ("Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.").

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id*. (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id*. (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

**B. Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

### A. Counts 4 and 5 Fail Because the NSA Does Not Contain an Express or Implied Private Right of Action to Enforce IDR Determinations

Anthem argues that the NSA does not provide an express or implied private right of action for the non-payment of IDR determinations (Count 4) or to enforce IDR payment determinations (Count 5). ECF 21 at 10. SJN does not dispute that the NSA does not provide an express private right of action but argues that the NSA provides for an implied private right of action. ECF 25 at 20.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Congress may so empower litigants expressly or implicitly." *UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018). When Congress does not explicitly create a cause of action, the Court must determine whether Congress implied one by "clear and unambiguous terms." *Lil' Man in the Boat, Inc. v. City and Cnty. of S.F.*, 5 F.4th 952, 958 (9th Cir. 2021). In doing so, a court should consider the statute's language, structure, context, and legislative history. *Id.* In all events, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). "[E]ven where a statute is phrased in [] explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private right but also a private remedy.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Sandoval*, 532 U.S. at 286).

As an initial matter, the Court notes that there is no binding precedent addressing this issue—neither the Ninth Circuit nor the Supreme Court have determined whether Congress implied a private right of action for non-payment of IDR payment determinations or to enforce IDR payment determinations under the NSA. The Court therefore conducts its own analysis of the NSA's language and structure and finds that the NSA did not provide a private right of action.

The Court finds that it is not enough that the NSA uses rights-creating language. It is true that the NSA contains "strong, mandatory language regarding health plans and insurers' payment obligations and the 'binding' effect of IDR awards" that "often reflects congressional intent to create a right and remedy for the individual to whom payment is due." ECF 25 at 21 (citing *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 324 (2020)). However, the remainder of the statute, especially its provisions concerning enforcement, evinces congressional intent *not* to create a judicial remedy. *Cf. Me. Cmty. Health Options*, 590 U.S. at 325 (finding there was a private right of action when there was mandatory language *and* a lack of a separate remedial scheme).

First, the text of the NSA does not clearly allow judicial enforcement of IDR determination. It states that IDR determinations "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). From this text, Anthem and SJN dispute whether Congress intended to expressly prohibit judicial review of only the validity of the IDR determination, or of its enforcement as well. ECF 25 at 22; ECF 21 at 13. The Court agrees with Anthem that that the FAA treats "judicial review" to include enforcement, and the failure to reference confirmation in Section 9 of the FAA is irrelevant because the determination is already binding. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (finding that the FAA "provides for expedited judicial review to confirm, vacate, or modify arbitration awards"). But the Court also notes that IDR determinations are not arbitrations under FAA. *Supra* Section III.B (finding that IDR determinations do not fall under the FAA). However, given the "clear and unambiguous standard" required to find an implied private right of action, along with the weight of the courts who have found the distinction between judicial review and judicial enforcement to be a "distinction without difference," the Court finds that § 300gg-111 alone cannot give rise to an implied right of action. *See, e.g., Mod. Orthopaedics*, 2025 WL 3063648, at *12.

Second, supporting the Court's interpretation of the prohibition of judicial enforcement in § 300gg-111, Congress provided for the enforcement of the NSA through

multiple federal agencies. First, Congress "empowered HHS to assess penalties against insurers for failure to comply with the NSA." *Guardian Flight, LLC. v. Health Care Serv. Corp.*, 140 F.4th 271, 277 (5th Cir. 2025) ("Guardian II") (citing 42 U.S.C. § 300gg-22(b)(2)(A); 45 C.F.R. § 150.301 et seq.), cert. denied, 223 L. Ed. 2d 509 (Jan. 12, 2026)). The Centers for Medicare & Medicaid Services, and agency within HHS, has solicited provider complaints and compelling payors to pay IDR awards where appropriate. *See* U.S. Gov't Accountability Off., GAO-24-106335, Private Health Insurance: Roll Out of Independent Dispute Resolution Process for Out-Of-Network Claims Has Been Challenging 35 (2023). Second, the Department of Labor may bring civil suits for violations of ERISA. 29 U.S.C. § 1132(a)(5). Third, the Treasury Department has wide-ranging power to tax any group health plan for the failure "to meet the requirements of chapter 100 (relating to group health plan requirements)" including the NSA. 26 U.S.C. §§ 9834, 4980D.

The Court finds SJN's arguments that appealing to these agencies are illusory to be unpersuasive. ECF 25 at 24.

SJN first points to *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212 (2d Cir. 2025), for the proposition that case law is trending towards ruling "that a health care provider cannot compel HHS [and other agencies] to enforce statutory deadlines or require additional actions in the IDR process." ECF 25 at 24. However, the ruling of *Neurological Surgery* was much narrower—that a healthcare provider lacks standing "to the extent [the plaintiff] seeks to compel enforcement of the deadlines on healthcare plans and IDR entities" when "the amended complaint [] suggest[s] that the injury is caused by the healthcare plans and IDR entities, not by the Departments." 145 F.4th at 226. As such, healthcare providers can bring a claim against an agency if the injuries are "fairly traceable" to that agency. *Id.*

SJN then argues that the NSA statutes do not fully allow HHS to impose civil monetary penalties on insurance companies. ECF 25 at 20–21. SJN notes that § 300gg-134(a) only allows HHS to impose civil monetary penalties on a *provider or facility*, not

the insurance company. ECF 25 at 20. The Court does not find this argument relevant in light of § 300gg-22, which allows HHS to impose a civil money penalty of up to $100 a day for each affected individual against a health insurance issuer or certain group health plans. SJN then reasons that § 300gg-22 is not enough because only a limited category of insurers are subject to its jurisdiction. ECF 25 at 21. However, SJN does not explain which categories of insurers are limited, nor does it explain how this alleged limitation "falls far short of the NSA's mandate." ECF 25 at 21.

SJN finally argues that civil monetary penalties are not enough to fulfill NSA's mandate that the IDR determinations were binding. ECF 25 at 21. SJN points to the Government's amicus brief that stated that civil monetary payments "may indirectly encourage payment . . . it would not be comprehensive, and it would not necessarily result in the provider compensation contemplated by Congress when it enacted the NSA." *Id.* (citing Br. of United States as *Amicus Curiae* in support of Plaintiffs-Appellants, No. 24-10561, 2024 WL 4451970, at *13 (5th Cir. Oct. 4, 2024)). However, HHS's civil monetary payment scheme is not the only enforcement mechanism for the NSA. Further, as another court in this District has found in this context, a decision by Congress may be "harsh and misguided," "odd," or "not wise," but that generally will not stop a court from enforcing it by its terms. *SpecialtyCare, Inc. v. Kaiser Found. Health Plan, Inc.*, No. 24-cv-09342-JST, 2026 WL 2043194, at *4 (N.D. Cal. July 15, 2026) (citing *United States v. Paulson*, 68 F.4th 528, 544–45 (9th Cir. 2023) (citation modified)).

Thus, this Court follows the others in this District and finds that there is no private right of action. *See, e.g., Kaiser*, 2026 WL 2043194; *SpecialtyCare, Inc. v. Cal. Physicians' Servs.*, No. 24-cv-9339-AMO, ECF 39. The Court dismisses Counts 4 and 5.

### B. Count 3 Fails Because the Court Cannot "Confirm" an IDR Determination Under the FAA

Anthem argues that the Court should dismiss Count 3, SJN's petition to confirm IDR awards under Section 9 of the FAA, because Section 9 does not apply to NSA IDR determinations. ECF 21 at 19. SJN argues that Section 9 should apply because Congress

"intended providers to be able to enforce [IDR] determination[s] in court" and the IDR process is binding and resembles arbitration.

First, as explained previously in Section III.A., Congress did not intend healthcare providers to be able to enforce IDR determinations in court. And the Court finds that Congress did not intend healthcare providers to confirm IDR determinations in court via the FAA—Congress only incorporated Section 10 of the FAA and not Section 9. *See Guardian II*, 140 F.4th at 276.

Second, the FAA could not have conferred authority on the Court to confirm the award, regardless of if the NSA process was similar to arbitration in that the determination would be final and binding. *See* ECF 25 at 25–27. This is because Section 9 of the FAA explicitly states that it allows for the confirmation of an arbitration award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. Here, it is not disputed that the parties had no pre-existing written contract or agreement. Compl. ¶ 47; *cf., Qorvis Comms., LLC v. Wilson*, 549 F.3d 303, 308 (4th Cir. 2008) (parties had a written agreement to arbitrate). Indeed, the IDR process is "statutorily compelled, not contractual." *Advanced Vascular Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 25-cv-05068-JDW, 2026 WL 935833, at *3 (E.D. Pa. Apr. 7, 2026) (citations omitted).

As such, the Court cannot confirm IDR awards under Section 9 of the FAA. The Court dismisses Count 3.

### C. Counts 1 and 2 Fail Because the SJN Does Not Have Standing Under ERISA

Anthem argues that the Court should dismiss Counts 1 and 2, SJN's ERISA claims, because SJN lacks Article III standing to bring these claims, and regardless, SJN fails to sufficiently state Counts 1 and 2. Microsoft incorporates Anthem's arguments.

As an initial matter, the Court finds that it can, and should, address Anthem's Article III standing arguments regardless of whether Anthem framed its motion to dismiss solely under Rule 12(b)(6). Although it is true that a motion to dismiss based on a lack of

standing is properly brought under Rule 12(b)(1), the court has an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of challenge from any party. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). It follows that other courts in this circuit have assessed Article III standing arguments raised in a Rule 12(b)(6) motion as raised under Rule 12(b)(1). *See, e.g., Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1076 n.9 (E.D. Cal. 2020) (treating the defendant's standing arguments as a Rule12(b)(1) motion to dismiss even though defendants brought their motion only under Rule 12(b)(6)).

Thus, the Court assesses whether SJN sufficiently established Article III standing. For an assignee like SJN to have standing for an ERISA claim, the assignor must have Article III standing. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz*, 770 F.3d 1282, 1289 (9th Cir. 2013). And to sufficiently allege Article III standing, the plaintiff bears the burden of showing, in part, that the assignor incurred an injury in fact that is "concrete and particularized" and "actual or imminent." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). As such, the Court must determine whether SJN sufficiently established that Patient, as the assignor, incurred a concrete injury. The Court finds that SJN did not.

SJN argues that Defendants' denial of the benefit of Patient's bargain, "regardless of whether she has directed the money be paid to a third party for her convenience," is a concrete injury. ECF 25 at 13. Specifically, SJN argues that Patient was denied the benefit that the Plan would "pay any amounts required by applicable law." ECF 25 at 4; Compl. ¶ 27. Anthem argues that this cannot be a concrete injury because Patient already received services and is responsible for the same amount of costs regardless of further dispute over payments. ECF 21 at 22.

There is no binding precedent determining whether a denial of the benefit of a patient's bargain, specifically that the patient's healthcare provider was not paid its IDR determination, without financial loss is a concrete injury. While SJN cites to the Ninth Circuit's decision in *Spinedex* for the proposition that a "denial of plan benefits is a

concrete injury for Article III standing even when patients were not directly billed for their medical services," the Court finds that this case is distinguishable. ECF 25 at 13 (citing, amongst others, *Spinedex*, 770 F.3d at 1289–91). In particular, *Spinedex* was ruled on before the implementation of the NSA's IDR process. This significantly affects *Spinedex*'s ruling, which found that the healthcare provider had standing regardless of economic loss because the patient "had the legal right to seek payment directly from the Plans for charges by [out-of-network] health care providers" at the time of assignment. 770 F.3d at 1291. Here, it appears that Patient no longer has this legal right due to the implementation of the IDR process, which limited the out-of-network charges dispute to be between the insurer and the healthcare provider. 42 U.S.C. § 300gg-111(c)(1)(A). Regardless, SJN did not allege and does not argue that Patient had this legal right.

The Court also notes that SJN did not address how the implementation of the IDR process affects the reasoning in its other cited cases, which were all ruled on prior to its implementation. For example, SJN does not address how the ruling in *N. Cypress Medical Ctr. Operating Co., Ltd. v. Cigna Healthcare*, which found that "a patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money be paid to a third party for her convenience," would apply to this case, where Patient is not owed money contractually in light of the new IDR process. 781 F.3d 182, 193 (5th Cir. 2015).

The only appellate court to have addressed whether a denial of a patient's bargain without financial loss within the context of the IDR process is the Fifth Circuit. *Guardian II* found that the insurer's breach of contract and the subsequent denial of the benefit of the patient's bargain, is merely a "technical violation" that "does no actual harm to the patients." 140 F.4th at 278. SJN does not distinguish this case from *Guardian II* and does not explain how the breach is not just a "technical violation." While the Court notes that another court in this district found that a denial of the patient's bargain was sufficient in the same context, the Court notes that the district court's reasoning heavily relied on cases that were ruled on prior to the implementation of the IDR process. *See Kaiser*, 2026 WL

2043194, at *6–7. Given the significant change in structure between patients and out-of-network costs after the implementation of the IDR process, the Court elects to follow the reasoning in *Guardian II*, and finds that as alleged, a denial of the Patient's bargain, specifically that the Plan would pay any amounts according to applicable law, is not a concrete injury. As such, the Court dismisses Counts 1 and 2.

The Court therefore does not reach the merits of Anthem's remaining failure to state a claim arguments. However, it notes that SJN did not respond to Anthem's failure to state a claim arguments, and generally, a party waives argument when it fails to respond to an argument made to the court." *See generally* ECF 25; *United States v. Cabrera*, 796 F. Supp. 3d 660, 664 (S.D. Cal. 2025) (citing *United States v. Caceres-Olla*, 738 F.3d 1051, 1063 n.1 (9th Cir. 2013)).

### D. Counts 6 Through 10 Fail Because the NSA Does Not Have a Private Right of Action

Anthem then argues that the NSA precludes Counts 6 through 10, SJN's state claims for account stated, open account, breach of the implied covenant of good faith and fair dealing or "bad faith," unjust enrichment, and unfair competition under the UCL. ECF 21 at 2. Anthem argues that the Court should dismiss these state claims because they are preempted by the NSA and fail to state a claim. *Id.* Microsoft incorporates these arguments as to Counts 9 and 10. ECF 20 at 1.

A plaintiff cannot "use state common law to circumvent the absence of a private right of action." *Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 66 (3d Cir. 2008). The Supreme Court has previously stated that "[t]he absence of a private right to enforce [a statute] . . . would be rendered meaningless if [the plaintiff] could overcome that obstacle" by pleading a breach of contract claim instead. *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 118 (2011).

Here, Anthem argues that SJN's state law claims "impermissibly seek to circumvent the NSA's lack of private right of action." ECF 21 at 27. The Court agrees. As found previously, there is no private right of action under the NSA. *Supra* Section III.A. And

United States District Court
Northern District of California

SJN's state law claims all depend on the allegation that Defendants failed to pay IDR awards in violation of the NSA. *See* Compl. ¶¶ 145 (alleging in Count 6 that Anthem provided partial payment without disputing the amount determined through the IDR process), 151 (alleging in Count 7 that "[d]espite Plaintiff SJN's demand for payment of the remaining balance, Defendant Anthem has failed to remit the sum of $71,888.85"), 158 (alleging in Count 8 that "[b]y failing to pay the binding IDR awards, Defendant Anthem has interfered with Plaintiff's contractual rights"), 167 (alleging in Count 9 that "[b]y refusing to pay the IDR awards . . . Defendants Microsoft and Anthem have wrongfully retained a windfall at SJN's expense"), 176 (alleging in Count 10 that "Defendants have engaged in conduct that violates federal law, including the NSA, 42 U.S.C. §§ 300gg-111-112, by failing to remit the binding IDR award within the statutory period").

SJN argues that it "makes detailed allegations regarding Defendants' initial inadequate payments, the balance of the money owed, and the Defendants' obligation to pay" and that the claims are "not dependent on involvement in the IDR proceedings, or in securing the awards." ECF 25 at 14. However, even if the state claims require proof of certain elements specific to those claims, it still stands that "the ultimate goal of the plaintiffs' claim is to enforce the federal statute"—each claim effectively requests that Defendants' pay the IDR award of $71,888.85. *SpecialtyCare, Inc. v. Meritain Health, Inc.*, No. 25-cv-198-MN, 2026 WL 353259, at *5 (D. Del. Feb. 9, 2026); Compl. ¶¶ 147, 151, 159, 169, 180. SJN may not use state law to invent a right of action that the NSA does not provide. *Savalia v. Anthem Blue Cross Life & Health Ins. Co.*, No. 26-cv-00736-FWS-KES, 2026 WL 2614181, at *5 (C.D. Cal. Sept. 3, 2026) (citing *Meritain*, 2026 WL 353259, at *7). As such, the Court dismisses Claims 6 through 10.

The Court does not reach whether SJN's state law claims are preempted by the NSA. The Court also does not reach whether SJN failed to sufficiently state a claim for its state claims but again notes that SJN did not respond to Anthem's failure to state a claim arguments, and that generally, a party waives argument when it fails to respond to an argument made to the court." *Cabrera*, 796 F. Supp. 3d. at 664 (citations omitted).

United States District Court
Northern District of California

## IV. CONCLUSION

In conclusion, the Court GRANTS Anthem's Motion to Dismiss and dismisses all claims in SJN's Complaint. Because Microsoft's Motion to Dismiss incorporates Anthem's arguments as to Counts 1, 2, 9, and 10, the Court also GRANTS Microsoft's Motion to Dismiss. The Court dismisses all claims against both Anthem and Microsoft without leave to amend because it finds that amendment would be futile.

**IT IS SO ORDERED.**

Dated: September 23, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge